COURT OF APPEALS
DECISION
DATED AND FILED

August 15, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1367**

Cir. Ct. No. **2021TR6474**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

JOSEPH B. VENABLE,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Columbia County: TODD J. HEPLER, Judge. *Affirmed.*

¶1 TAYLOR, J.[1] Joseph Venable appeals a circuit court judgment convicting him of first offense operating a motor vehicle while under the influence

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

of controlled substances pursuant to WIS. STAT. § 346.63(1)(a).[2]  The State proceeded based on a theory that Venable was incapable of safely driving because of his use of controlled substances that were prescribed to him.  Venable argues that the State presented insufficient evidence to establish that the controlled substances caused his impairment.  I reject Venable's arguments and affirm.

## BACKGROUND

¶2      The following facts, taken from the arresting officer's testimony, are undisputed.  At approximately 10:30 p.m. on the night of September 24, 2021, a Wisconsin State Patrol trooper learned from dispatch that four complaints had been made about a car driving northbound on an interstate highway in Columbia County.  The trooper responded and located the car, which was driven by Venable.  She observed Venable's car, which was in the right lane, go onto the right shoulder, then deviate into the middle lane, nearly colliding with a truck.  Venable's car continued to cross lane lines, and the trooper initiated a traffic stop.

¶3      The trooper asked Venable about his poor driving, and he explained that he was "tired and falling asleep."  Venable said that he was on his way to visit

---

[2] Under that statute,

> No person may drive or operate a motor vehicle while:
>
> (a) Under the influence of an intoxicant, a controlled substance, a controlled substance analog or any combination of an intoxicant, a controlled substance and a controlled substance analog, under the influence of any other drug to a degree which renders him or her incapable of safely driving, or under the combined influence of an intoxicant and any other drug to a degree which renders him or her incapable of safely driving ….

WIS. STAT. § 346.63(1)(a).

2

his mother in Madison, which confused the trooper because Venable was driving north but Madison was to the south. Venable admitted that he did not know where he was. The trooper observed that Venable's speech was slow and slurred, that his pupils were dilated, and that his body movements were "very animated."

¶4 The trooper asked Venable if he had taken any prescription medications, and Venable responded that he had taken four prescription medications, including Adderall and paroxetine, that morning. He reported that he had been taking Adderall and paroxetine for five to six years. Based on her training, the trooper knew that Adderall is a stimulant, and can cause hyperactivity, nervousness, "extreme talking," and an "inability to sit still."

¶5 The trooper administered field sobriety tests. Venable exhibited six out of six possible indicators of impairment on the horizontal gaze nystagmus test, four out of eight indicators on the walk-and-turn test, and two out of four indicators on the one-leg stand test.[3] Venable had difficulty following instructions on the walk-and-turn test and the one-leg stand test. Venable also performed a Modified Romberg test, which is a test directed at assessing impairment from a controlled substance. Venable did not show signs of impairment on this test.

¶6 The trooper arrested Venable on suspicion of operating a motor vehicle under the influence of a controlled substance which rendered him incapable of safely driving. *See* WIS. STAT. § 346.63(1)(a). For ease of reference, I refer to this offense as "OWI." Upon searching Venable's car, the trooper

---

[3] Venable told the trooper that he had medical conditions that could interfere with these tests; specifically, he told the trooper that he had nystagmus and that he had a blood clot in his leg that might affect his ability to walk.

3

discovered "loose Adderall pills that weren't in the bottle," as well as "broken pills." The trooper asked Venable about the broken pills, and he explained that he sometimes takes a half-pill because he "doesn't like to be overstimulated."

¶7 Venable consented to an evidentiary blood test, which revealed the presence of amphetamine and paroxetine in his blood. The State cited Venable with OWI, and the case proceeded to a bench trial.

¶8 During the trial, the forensic scientist who analyzed Venable's blood testified as follows. The blood test indicated the presence of amphetamine, which is the "main ingredient" of Adderall, at a level of 260 nanograms per milliliter; and the presence of paroxetine, at an unspecified level. Although it is "very uncommon," amphetamine and paroxetine can interact to cause "serotonin syndrome," which is "an excess of the chemical serotonin in the body that can have adverse complications." These complications can include "sweating, shivering, uncontrolling [sic] body movements, [and] confusion," as well as more severe side effects including "unconsciousness and death." The forensic analyst did not testify as to any other impairing effects of the controlled substances.

¶9 The circuit court determined that the State had met its burden to prove that Venable was guilty of OWI and entered a judgment of conviction.

## DISCUSSION

¶10 "No person may drive or operate a motor vehicle while … under the influence of … a controlled substance … to a degree which renders him or her incapable of safely driving." WIS. STAT. § 346.63(1)(a). The parties appear to agree that Adderall, amphetamine, and paroxetine are "controlled substances" for the purposes of § 346.63(1)(a).

4

¶11     Venable does not contest that he was incapable of driving safely. Venable's sole argument on appeal is that the State failed to introduce sufficient evidence that his unsafe driving was due to the influence of a controlled substance.

¶12     The evidence to support a conviction is insufficient only if, "when viewed most favorably" to the government, the evidence "is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt" under the applicable evidentiary standard. *State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990). Here, that standard is proof by "clear, satisfactory and convincing" evidence. WIS. STAT. § 345.45 (setting forth the applicable burden of proof for civil traffic violations; *see also County of Racine v. Smith*, 122 Wis. 2d 431, 435, 362 N.W.2d 439 (Ct. App. 1984) (first offense violation of WIS. STAT. § 346.63(1)(a) is a civil matter)).

¶13     Venable argues that the State failed to establish a "nexus" linking a controlled substance in his blood to his unsafe driving. Venable notes that he had prescriptions for Adderall (the presumed source of the amphetamine in his blood) and for paroxetine, and that the State did not introduce evidence that the levels of a controlled substance found in his blood would cause impairment or were outside the normal amount for someone appropriately ingesting their prescribed medications. He contends that the "other theoretical possibility was that [he] was too tired to drive safely," and that the evidence "overwhelmingly established" fatigue, rather than a controlled substance as the cause of his admittedly unsafe driving.

¶14     Venable relies on *State v. McAdory*, 2021 WI App 89, 400 Wis. 2d 215, 968 N.W.2d 770, which, like this case, involves an OWI action pursuant to

WIS. STAT. § 346.63(1)(a) based on alleged impairment by controlled substances. In that case, McAdory was arrested for OWI, and a subsequent test of his blood showed the presence of the controlled substances cocaine and THC. *Id.*, ¶¶11, 14. The blood test results were presented to the jury; however, the State did not present evidence "regarding the particular impairing effects" of the levels of those substances. *Id.*, ¶¶26-27. McAdory argued that, due to the lack of such evidence, the State had introduced insufficient evidence to prove that the controlled substances caused his impairment. *Id.*, ¶22.

¶15     This court acknowledged that McAdory had "identified deficits in the evidence." *Id.*, ¶34. However, it determined that there was "extensive circumstantial evidence of impairment which the jury could reasonably attribute to the controlled substances," and that this evidence was "sufficient to overcome the lack of testimony based on science, experience, or observation regarding specific impairing effects of cocaine and THC." *Id.*, ¶29. This circumstantial evidence included the following:  the fact that the other theoretical possibility for the impairment, alcohol, had been ruled out, *id.*, ¶30; signs of impairment such as "impulsive and reckless behavior of running from the police," *id.*, ¶31; and the fact that "it is within the common knowledge of jurors that a person *can*, after ingesting sufficient amounts of cocaine and THC, become unable to safely control a vehicle," *id.*, ¶32. This evidence permitted a "reasonable inference" that McAdory's impairment was due to controlled substances. *Id.*, ¶34.

¶16     As in *McAdory*, the State here did not introduce direct evidence regarding the impairing effects of the levels of the controlled substances found in Venable's blood. Venable acknowledges that this court nevertheless concluded in *McAdory* that the evidence was sufficient, but argues that the application of *McAdory*'s reasoning leads to the opposite conclusion here. For reasons I now

explain, I conclude that, despite the lack of direct evidence regarding the impairing effects of the specific levels of controlled substances in Venable's blood, the evidence nevertheless permits a reasonable inference that Venable's impairment was due to his use of a controlled substance.

¶17     First, the record contains evidence that Venable displayed an unusual level of impairment.     Although Venable argues that the facts "overwhelmingly establish" fatigue as the cause of his impairment, this argument overlooks facts suggesting impairment beyond that expected from mere fatigue. Venable's driving conduct was extremely unsafe:  four other drivers called police with complaints, and his repeated lane deviations in highway traffic nearly caused a collision.  In his interactions with the trooper, Venable displayed a high level of confusion, indicating a destination that was in the opposite direction he was driving, and indicating that he did not know where he was.  He likewise had difficulty understanding field sobriety test instructions.  This unusual level of impairment could support a reasonable inference that Venable's impairment was not due to a commonplace condition such as fatigue, especially because Venable identifies no evidence explaining why he would have been so fatigued at 10:30 p.m. that he would exhibit such a high degree of impairment and unsafe driving.

¶18     Second, the record contains evidence regarding the potential impairing effects of the controlled substances, as well as evidence supporting an inference of impairment by those substances.  As noted above, the trooper testified that Adderall is a stimulant and can cause hyperactivity and related effects such as an "inability to sit still."  It is reasonable to infer that such effects can impair one's ability to drive safely.  Venable contends that "most" of the trooper's observations of Venable suggest "a low energy level," rather than hyperactivity.  He also notes

7

that he did not show signs of impairment on the Modified Romberg test, which can indicate impairment by controlled substances. However, the trooper also testified that Venable's body movements were unusually "animated," consistent with the stimulant effects of Adderall. Additionally, Venable's driving conduct (repeated lane deviations) could also be consistent with such effects. The fact that Venable's behavior is only partially consistent with the impairing effects of Adderall does not rule out a reasonable inference that Adderall caused the impairment, particularly considering the unusually high level of impairment present here.

¶19    Venable also contends that it was "reasonable to infer" that Adderall would not interfere with his ability to drive because he had a prescription for it and had been taking it for several years. He concedes that this premise depends on his taking "the amount prescribed," but contends that his statement to the trooper that he had taken his medications as prescribed that day is "uncontroverted." However, the circuit court was not required to credit this statement, and Venable ignores evidence suggesting a contrary inference. As noted, the trooper testified that she found loose Adderall pills in Venable's car, and also found broken pills, which Venable explained by saying that he "doesn't like to be overstimulated"— in essence, an admission that, at least on some occasions, he did not use Adderall as prescribed. The fact that Adderall pills were "loose" and presumably accessible in Venable's vehicle, along with Venable's admission, could support a reasonable inference that, at the time of the driving conduct, he had used Adderall other than as prescribed—such as by taking additional Adderall while driving in an attempt to stay alert.

¶20    At trial, there was also evidence that impairment could result from the interaction of amphetamine and paroxetine. As noted above, the forensic

analyst testified that these drugs could interact to cause serotonin syndrome, a "very uncommon" condition with symptoms including sweating, uncontrolled body movements, and confusion.[4] Venable argues that this evidence should be given "little to no consideration" for reasons including the fact that the analyst testified that serotonin syndrome was rare and that Venable exhibited only one of its symptoms, confusion. I agree that little evidence supports the premise that serotonin syndrome was the cause of Venable's impairment, and by itself, this evidence may not support a reasonable inference that controlled substances caused Venable's impairment. However, as noted above, this is not the sole evidence in the record suggesting impairment by controlled substances. The record as a whole supports an inference that Venable's use of Adderall, a controlled substance, caused his impairment.

¶21 In sum, although the State did not present evidence of the specific impairing effects of the levels of the controlled substances present in Venable's blood, it nevertheless presented sufficient evidence to support a reasonable inference that his impaired driving was due to controlled substances. I reject Venable's argument that the circuit court could only have reasonably attributed his impaired driving to fatigue. Even if the record supports an inference that Venable's impairment was due to fatigue, it is not the role of this court to choose between competing inferences. When the record "supports more than one inference, an appellate court must accept and follow the inference drawn by the

---

[4] Venable notes that he objected to the forensic analyst's testimony, but he does not expressly argue that the circuit court erred in overruling his objection and allowing the testimony. To the extent that Venable intends to make such an argument, I reject it as undeveloped. *See State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992) (this court need not address undeveloped arguments).

trier of fact unless the evidence on which that inference is based is incredible as a matter of law." ***State v. Poellinger***, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990). I cannot conclude, on this record, that "no trier of fact, acting reasonably, could have found guilt" by clear, satisfactory, and convincing evidence. ***Id.*** at 501; WIS. STAT. § 345.45. Accordingly, I reject Venable's argument that the evidence was insufficient to support his OWI conviction.

## CONCLUSION

¶22 For all of these reasons, I affirm the circuit court's judgment of conviction for first offense OWI.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.