COURT OF APPEALS
DECISION
DATED AND FILED

March 6, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2023AP1042-CR**

Cir. Ct. No. 2020CF40

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT IV**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

CATHERINE E. EDWARDS,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Portage County: PATRICIA A. BAKER, Judge. *Affirmed*.

Before Kloppenburg, P.J., Graham, and Nashold, JJ.

¶1    KLOPPENBURG, P.J. Catherine Edwards appeals the judgment convicting her, following a jury trial, of two counts of possession of child pornography, as well as the circuit court's order denying her motions for postconviction relief. Edwards' primary arguments on appeal concern the

definition of "lewd exhibition of intimate parts" that applied to the possession of child pornography counts. Specifically, Edwards argues that the evidence was insufficient to convict her under the common law definition of "lewd exhibition of intimate parts" in effect at the time of the offenses. Edwards also argues that her trial counsel was ineffective for failing to object to a jury instruction that defined "lewd exhibition of intimate parts" under the current statute because the jury instruction defined that phrase more broadly than the common law definition in effect at the time of the offenses, thereby making it easier for the State to prove that Edwards was guilty of the offenses. Separately, Edwards argues that she is entitled to a new trial because the prosecutor improperly commented on the evidence in his rebuttal argument so as to invite the jury to find her guilty "based on improper considerations."

¶2 We conclude that the evidence was sufficient to convict Edwards under the common law definition of "lewd exhibition of intimate parts" in effect at the time of the offenses. We also conclude that Edwards' trial counsel was not ineffective for failing to object to the jury instruction that defined "lewd exhibition of intimate parts" under the current statute, because there is no material difference pertinent to the images at issue here between the common law definition in effect at the time of the offenses and the statutory definition reflected in the jury instruction. In other words, under both the prior common law definition and the current statutory definition as reflected in the jury instruction, an image depicts "lewd exhibition of intimate parts" if it displays a person's intimate parts and if the person is posed as a sex object or there is an unnatural or unusual focus on the intimate parts. We further conclude that Edwards fails to show that the circuit court erroneously exercised its discretion in denying her motion for a mistrial

2

based on its determination that the prosecutor did not improperly comment on the evidence in his rebuttal argument. Accordingly, we affirm.

## BACKGROUND

¶3 In January 2020, the State charged Edwards with one count of sexual assault of a child under 16 as a party to the crime and two counts of possession of child pornography, based on events that occurred between October 2018 and April 2019.[1]

¶4 At trial, the State presented the following evidence pertinent to this appeal. Detective Kevin Flick investigated a cyber tip from the National Center for Missing and Exploited Children regarding sexually explicit materials being sent over Facebook Messenger by a 14-year-old girl, A.B., to Edwards' boyfriend, Nicholas Kvatek.[2] Pursuant to this investigation, Flick obtained a search warrant for Kvatek's residence, where the 40-year-old Kvatek lived with the 40-year-old Edwards. When police executed the search warrant, they arrested Kvatek, and

---

[1] Edwards does not challenge her conviction on the sexual assault count. We reference facts pertinent to that count only to the extent the facts are relevant to Edwards' arguments regarding the possession of child pornography counts.

The possession of child pornography counts were charged under WIS. STAT. § 948.12(1m) (2023-24), which prohibits possessing or accessing "in any way with intent to view any … photograph … or other recording of a child engaged in sexually explicit conduct." Pertinent here, under WIS. STAT. § 948.01(7)(e), "sexually explicit conduct" includes "[l]ewd exhibition of intimate parts."

All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted, because the relevant statutes in effect at the time of Edwards' offenses have not changed, with one exception. As we discuss in detail below, the definition of "lewd exhibition of intimate parts" in WIS. STAT. § 948.01(1t) did not exist at the time of Edwards' offenses.

[2] To protect the dignity and privacy of the victim, we refer to her as A.B., using initials that do not correspond to her real name. *See* WIS. STAT. RULES 809.19(1)(g) and 809.86.

Flick spoke with Edwards. Police also seized two cell phones, one belonging to Kvatek and the other belonging to Edwards.

¶5 On Kvatek's phone, Flick discovered, among other images of child pornography, a 52-second video recording of two adults, later identified by Flick and A.B. as Kvatek and Edwards, sexually assaulting A.B. with a purple dildo. Flick testified that a purple dildo matching the one used in the video recording of the sexual assault was found in Kvatek and Edwards' bedroom during the execution of the search warrant.

¶6 On Edwards' phone, Flick discovered two photographs of A.B. that showed A.B. standing in Kvatek and Edwards' living room, "completely naked and holding a paintbrush." In one photograph, A.B.'s breasts were visible, and in the other photograph, both her breasts and buttocks were visible. A still shot from the video recording and both photographs were admitted into evidence. A.B. testified that she did not remember who took the photographs of her and that she was not posing for the photographs but actually painting the living room.

¶7 At the close of the State's case, Edwards moved to dismiss the two child pornography counts on the ground that "no jury could find that those pictures that are portrayed … in any way meet the statutory definition of a lewd exhibition of intimate parts." The circuit court denied the motion.

¶8 Edwards testified for the defense. She denied having sex with A.B., taking photographs showing A.B. naked, or knowing that the two photographs forming the basis of the child pornography counts were on her phone. Edwards also denied owning or being aware of the purple dildo used in the video recording and found in Kvatek's and her bedroom.

¶9     The defense rested after Edwards' testimony, and the circuit court held a jury instruction conference outside the presence of the jury. Edwards' trial counsel did not object to the instruction applicable to the two counts of possession of child pornography.

¶10    Edwards' trial counsel renewed his motion to dismiss the two counts of possession of child pornography on the ground that no reasonable jury could find that the two photographs "fit the definition of sexually explicit behavior." The circuit court again denied the motion.

¶11    The circuit court instructed the jury on the two counts of possession of child pornography, in pertinent part, as follows:

> Possession of child pornography as defined at 948.12, sub (1m), of the criminal code of Wisconsin is committed by one who knowingly possesses or accesses in any way with intent to view any … photograph … or other recording of a child engaged in sexually explicit conduct….
>
> ….
>
> Elements of the crime….
>
> ….
>
> Element No. 2.  As to each count, the recording showed a child engaged in sexually explicit conduct…. Sexually explicit conduct means actual or simulated masturbation or lewd exhibition of an intimate part. Intimate part means the breast, buttock, anus, groin, scrotum, penis, vagina, or pubic mound of a human being. Lewd exhibition of intimate parts means the display of less than fully and opaquely covered intimate parts of a person who is posed as a sex object or in a way that places an unnatural or unusual focus on the intimate parts.

This instruction's definition of "lewd exhibition of intimate parts" reflected the definition in WIS. STAT. § 948.01(1t), which did not become effective until several

months after Edwards' alleged commission of the offenses. *See* 2019 Wis. Act 16 (eff. July 12, 2019).

¶12 The parties then made their closing arguments. In the State's rebuttal, the prosecutor, in the course of arguing to the jury that it should disbelieve Edwards' denial of her involvement in the charged offenses, referred to Flick's testimony identifying the purple dildo found in Kvatek and Edwards' bedroom "as being the dildo that was used in this child pornography – when this defendant and her boyfriend manufactured this child pornography involving this child." Edwards' trial counsel objected, arguing that this statement was "trying to imply that something other than [the two photographs] are the basis for the child pornography [counts]." The circuit court sustained the objection, and the prosecutor continued, again arguing that Edwards "participated in the manufacture of child pornography," specifically referring to the "52-second video [recording]" as child pornography.

¶13 After the circuit court sent the jury to deliberate, Edwards' trial counsel moved for a mistrial based on the rebuttal argument "referring to the [still shot from the video recording] with the sexual – actual sex involved as being child pornography when that is not the charge." Counsel explained, "I think [the State is] trying to impl[y] that my client, by making that [video recording] or doing that, is guilty of charges of Counts 2 and 3." The prosecutor responded that he was "entitled to comment on the evidence" and "to describe it as child pornography is simply stating a fact that was put into evidence." The court denied the motion for a mistrial, relying on the jury instructions that clarified that each of the possession of child pornography counts was tied to a specific exhibit consisting of a photograph, as well as on the jury instruction clarifying that remarks of the attorneys are not evidence.

¶14  The jury found Edwards guilty on all counts.

¶15  Edwards moved for postconviction relief, arguing that there was insufficient evidence to convict her on the possession of child pornography counts, that her trial counsel was ineffective for failing to object to the purportedly erroneous jury instruction on those counts, and that the State made improper statements during closing arguments. The circuit court held a hearing on the motions, at which Edwards' trial counsel testified that he was not aware at trial that the definition of "lewd exhibition of intimate parts" used in the jury instructions had been enacted by statute after the date of Edwards' offenses, and that, had he been aware, he would have asked for the definition set forth in case law to be used "[i]f the definition … made it harder to prove possession of child pornography."[3]  The court denied the postconviction motions.

¶16  This appeal follows.

## DISCUSSION

¶17  Edwards makes three arguments on appeal. First, she argues that there was insufficient evidence to support her convictions for possession of child pornography under the definition of "lewd exhibition of intimate parts" in effect at the time of her offenses. In particular, she argues that the definition of "lewd exhibition of intimate parts" under which the jury deliberated, made effective by statute in July 2019, was broader than the common law definition in effect as of the date of her charged conduct, and that the jury would likely not have found her

---

[3] The circuit court heard argument on multiple issues at the hearing; for the purposes of the ineffective assistance of counsel argument, this hearing served as a *Machner* hearing. *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

guilty had it been correctly instructed under the common law definition. Second, she argues that she should be granted a new trial because her trial counsel was ineffective for failing to object to the jury instruction defining "lewd exhibition of intimate parts" under the statute. Third, she argues that she is entitled to a new trial because the prosecutor improperly commented on the evidence in his rebuttal argument so as to invite the jury to find her guilty "based on improper considerations." For the following reasons, we reject each of her arguments and affirm her convictions.

## I. Sufficiency of the Evidence

¶18 Edwards argues that the evidence introduced at trial was insufficient to support her convictions for possession of child pornography. Specifically, she contends that the evidence was insufficient to support the element that the photographs depicted "lewd exhibition of intimate parts." We review de novo the sufficiency of the evidence to sustain a verdict of guilt. *State v. Smith*, 2012 WI 91, ¶24, 342 Wis. 2d 710, 817 N.W.2d 410. On our de novo review, "we consider the evidence in the light most favorable to the State" and the conviction, and we reverse "only where the evidence 'is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt.'" *Id.* (quoting *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990)).

¶19 We "typically review[] the sufficiency of the evidence to support a criminal conviction by comparing the evidence with the legal standards set forth in the jury instructions used at trial, because the instructions given by the circuit court are typically accurate statements of the law." *State v. McAdory*, 2021 WI App 89, ¶17, 400 Wis. 2d 215, 968 N.W.2d 770. However, when, as here, the

parties dispute whether the jury instruction accurately reflected the law, we examine the sufficiency of the evidence "by comparison to what the statute requires." *Cf. State v. Beamon*, 2013 WI 47, ¶3, 347 Wis. 2d 559, 830 N.W.2d 681 (examining sufficiency of the evidence as compared to the statutory elements when the jury instruction added a requirement not included in the statute).

¶20    We agree with the parties that the common law defined what the statute prohibiting possession of child pornography required the State to prove at the time of Edwards' offenses. As we now explain, we conclude that the common law definition required that the image visibly displays a child's intimate parts and that the image is "sexually suggestive," meaning that the child is posed as a sex object or there is an unusual or unnatural focus on the child's intimate parts. We further conclude that the evidence was sufficient to convict Edwards under the common law definition.

¶21    As noted above, Edwards was charged with possession of child pornography, contrary to WIS. STAT. § 948.12(1m). That statute provided at the time of the charged conduct and continues to provide today:

> Whoever possesses, or accesses in any way with the intent to view, any undeveloped film, photographic negative, photograph, motion picture, videotape, or other recording of a child *engaged in sexually explicit conduct* under all of the following circumstances may be penalized under sub. (3):
>
> (a) The person knows that he or she possesses or has accessed the material.
>
> (b) The person knows, or reasonably should know, that the material that is possessed or accessed contains depictions of sexually explicit conduct.
>
> (c) The person knows or reasonably should know that the child depicted in the material who is engaged in

9

> sexually explicit conduct has not attained the age of 18 years.

Sec. 948.12(1m) (emphasis added). Pertinent here, "sexually explicit conduct" is defined as "actual or simulated: … Lewd exhibition of intimate parts." WIS. STAT. § 948.01(7)(e). This statutory provision was also in place at the time of Edwards' offenses and remains in effect.

¶22 At the time of Edwards' offenses, "lewd exhibition of intimate parts" was not defined by statute. The parties agree that the definition of "lewd exhibition of intimate parts" that applied to Edwards' conduct was the definition set forth in the common law, most extensively in *State v. Petrone*, 161 Wis. 2d 530, 468 N.W.2d 676 (1991), *overruled in part by State v. Greve*, 2004 WI 69, 272 Wis. 2d 444, 681 N.W.2d 479. We now proceed to analyze *Petrone* and other cases addressing the topic to identify the elements of that definition, which the jury had to find the photographs satisfied in order to convict Edwards on the possession of child pornography counts.

¶23 In *Petrone*, the defendant was charged with violating a statute that prohibited photographing or otherwise recording "a child engaged in sexually explicit conduct." *Petrone*, 161 Wis. 2d at 558 (quoting WIS. STAT. § 940.203(2) (1987-88)). The statute defined "sexually explicit conduct" to include "lewd exhibition of the genitals or pubic area of any person." WIS. STAT. § 940.203(6)(b)5. (1987-88).[4] The phrase "lewd exhibition of [intimate parts]"

---

[4] Edwards concedes that after *Petrone* was decided, but before the date of the offenses in this case, the statutes were amended by changing the phrase "lewd exhibition of the genitals or pubic area" to "lewd exhibition of intimate parts," and, therefore, that the broader term "intimate parts" applies to our analysis. We will use the term "intimate parts" throughout the remainder of our analysis.

was not defined in the statutes, and the circuit court gave the following jury instruction defining this phrase:

> The word "lewd" has a generally well recognized meaning, connoting sexual suggestiveness.
>
> … Mere nudity does not constitute the type of exhibition which is prohibited by the statute.
>
> ….
>
> Now, examples of sexually suggestive or lewd photographs of a child would be those in which the child is depicted or posed in such a way as to depict or suggest a willingness to engage in sexual activity or a sexually coy attitude. Whether or not the child intended such a pose is not the issue, but rather what a reasonable person viewing a photograph would perceive is being suggested. Now, no expanded writing or written definition of what constitutes a lewd exhibition of [intimate parts] would encompass all of the uncountable variations which such photographs might take…. Words cannot describe all of the nuances of that which constitutes lewdness. However, … with a few general principles in mind, most persons, upon seeing a photograph which is lewd, would be able to agree that it is such.

*Petrone*, 161 Wis. 2d at 559.

¶24 Petrone challenged this instruction as erroneous, arguing that it was "rambling, open ended, and vague." *Id.* Our supreme court rejected this argument, concluding that "the circuit court accurately apprised the jury of what 'lewd' means. The … court told the jurors that mere nudity is not enough—the pictures must display the child's [intimate parts]; that the photographs must be sexually suggestive; and that the jurors may use common sense to determine whether the photographs were lewd." *Id.* at 561-62. The court also gave additional guidance on the definition of lewd in the context of images of child pornography:

> After examining cases interpreting similar child pornography laws and the term "lewd," we conclude that no one definition has been established for "lewd." Three concepts are generally included in defining "lewd" and sexually explicit. First, the photograph must visibly display the child's [intimate parts]. Mere nudity is not enough. Second, the child is posed as a sex object. The statute defines the offense as one against the child because using the child in that way causes harm to the psychological, emotional and mental health of the child. The photograph is lewd in its "unnatural" or "unusual" focus on the juvenile's [intimate parts], regardless of the child's intention to engage in sexual activity or whether the viewer or photographer is actually aroused. Last, the court may remind the jurors that they should use these guidelines to determine the lewdness of a photograph but they may use common sense to distinguish between a pornographic and innocent photograph.

*Id.* at 561.

¶25     We interpret this language to define "lewd exhibition of intimate parts" as follows. Whether an image depicts "lewd exhibition of intimate parts" is a common-sense decision for the jury to make. *Id.* In making that common-sense determination, the jury must make two findings: (1) that the image visibly displays the child's intimate parts, and (2) that the image is sexually suggestive. *Id.* As to the second required finding, the jury is to be guided by whether the child is "posed as a sex object," which may be shown by an "'unnatural' or 'unusual' focus" on the child's intimate parts, or in some other manner. *Id.* That is, the "sexually suggestive" finding does not require that the State prove both that the child is posed as a sex object and that there is an unnatural or unusual focus on the child's intimate parts. Rather, showing that there is an unnatural or unusual focus on the child's intimate parts is one way of proving that the child is posed as a sex object. In other words, the State must prove that there is an unnatural or unusual focus on the child's intimate parts or that the child is posed as a sex object in some other manner.

12

¶26 This interpretation is supported by subsequent cases applying *Petrone* and interpreting the definition of "lewd exhibition of intimate parts." In *State v. Lala*, 2009 WI App 137, 321 Wis. 2d 292, 773 N.W.2d 218, this court explained that "[our] supreme court stated that *visible display* of the child's [intimate parts] and posing the child as a sex object with an unnatural or unusual focus on the child's [intimate parts] should inform the common sense determination by the trier of fact regarding the pornographic nature of the image," and that "[t]he determination of what is lewd and therefore 'sexually explicit conduct' within the meaning of WIS. STAT. § 948.12(1m) is a common sense factual finding to be made by the trier of fact[,] [which] determination is guided by the general concepts articulated in *Petrone*." *Lala*, 321 Wis. 2d 292, ¶¶13, 20. In *State v. Mercer*, 2010 WI App 47, 324 Wis. 2d 506, 782 N.W.2d 125, this court concluded that "[t]he term 'lewd' contemplates that the jury should use common sense to determine whether the pictures show nudity and are sexually suggestive." *Mercer*, 324 Wis. 2d 506, ¶40 (citing *Petrone*, 161 Wis. 2d at 561-62).

¶27 This interpretation is also supported by the comments to WIS JI—CRIMINAL 2146A (2013), the jury instruction in effect prior to the enactment of the statutory definition of "lewd exhibition of intimate parts." Comment 8 to that instruction cites *Petrone* for its definition of "lewd exhibition of intimate parts," explaining that the three concepts "'generally included in'" the definition provided by our supreme court in *Petrone*, are: (1) "'mere nudity is not enough—the pictures must display the child's [intimate parts]'"; (2) "'the photographs must be sexually suggestive'"; and (3) "'the jurors may use common sense to determine whether the photographs were lewd.'" WIS JI—CRIMINAL 2146A at 6 (2013) (quoting *Petrone*, 161 Wis. 2d at 561).

13

¶28 Edwards argues that, under **Petrone**, in order for an image to depict "lewd exhibition of intimate parts," the image "must have all of the following characteristics: (1) It must display the child's intimate part; (2) the child must be posed as a sex object; [and] (3) there must be an unnatural or unusual focus on the intimate area." For the reasons explained above, we reject this argument as contrary to the language in **Petrone**. To repeat, **Petrone** defines an image that depicts "lewd exhibition of intimate parts" as an image that displays the child's intimate parts and is sexually suggestive. **Petrone**, 161 Wis. 2d at 561. What Edwards describes as requirement (3) is in fact one way of proving that the child is posed as a sex object, which may guide the jury's determination that the image is "sexually suggestive." *See **id.*** It is not an additional requirement. Said another way, **Petrone** requires that the jury, using its common sense, determine whether an image displays a child's intimate parts and whether the image is sexually suggestive, and that, as to the latter determination, the jury be guided by whether the child is posed as a sex object, which may or may not include an unnatural or unusual focus on the intimate parts. **Id.** Edwards' assertion that **Petrone** requires that the jury find both that the child is posed as a sex object *and* that there is an unnatural or unusual focus on the intimate parts has no support in the language in **Petrone**.

¶29 Having examined the photographs at issue, which show A.B. standing naked in a living room holding a paintbrush and which visibly display her breasts and buttocks, we conclude that a reasonable jury could have found, beyond a reasonable doubt, that the photographs in Exhibits 2 and 3 depicted "lewd exhibition of intimate parts." It is undisputed that the photographs displayed A.B.'s intimate parts. A reasonable jury could have used its common sense to determine that the photographs were also sexually suggestive, because A.B. was

either shown "in a way that place[d] an unnatural or unusual focus on [her] intimate parts" or otherwise "posed as a sex object." *See **id.*** Specifically, a reasonable jury could have found that the image showing A.B. standing naked painting the wall of a living room, an action that is not ordinarily performed while naked, with her breasts and buttocks plainly visible, "unnaturally" or "unusually" drew attention to, or focused on, A.B.'s intimate parts. *See **id.*** A reasonable jury could also have found that A.B. was posed as a sex object in other respects: she was placed in the center of the frame, with her intimate parts exposed, performing a mundane task normally performed with clothes on, and her nakedness in this context may have reasonably signified that she was posed as a sex object.

¶30 Edwards argues that there was no "unnatural or unusual focus" on A.B.'s intimate parts in the photographs. We reject this argument for the reasons explained above. Edwards also asserts that "[a]rguably, [A.B.] [was] not posed as a sex object either. There is nothing to suggest she was even aware the photographs were being taken." We reject this assertion about what is "arguable" for the same reasons explained above, as well as based on Edwards' apparent concession that a finding to the contrary is "arguable." *See **Smith***, 342 Wis. 2d 710, ¶24 (this court considers the evidence "in the light most favorable to the State" and the conviction). We also reject this argument because whether or not A.B. herself believed that she was posing is not determinative of whether she was posed as a sex object. *See **Petrone***, 161 Wis. 2d at 559, 561 (child's intent is irrelevant).

¶31 In sum on this issue, we conclude that Edwards has failed to show that "the evidence 'is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt.'" *See **Smith***, 342 Wis. 2d 710, ¶24 (quoted source omitted). In other words, we

conclude that there was sufficient evidence to support her convictions on the possession of child pornography counts under the common law definition of "lewd display of intimate parts" in effect at the time of her offenses.

## II. Erroneous Jury Instruction—Ineffective Assistance of Counsel

¶32    Edwards argues that the jury instruction on the possession of child pornography counts was erroneous because it reflected the statutory definition of "lewd exhibition of intimate parts" that became effective after the time of the offenses, rather than the common law definition set forth in *Petrone* that was in effect at the time of the offenses. Specifically, Edwards argues that the statutory definition reflected in the jury instruction "broadened the definition of the relevant term as defined in *Petrone*," and, therefore, that the jury instruction made it easier for the State to prove that the photographs depicted "lewd exhibition of intimate parts."

¶33    The parties do not dispute that Edwards forfeited her objection to the use of the jury instruction on the possession of child pornography counts by failing to object at the jury instruction conference. *See* WIS. STAT. § 805.13(3) ("Failure to object at the conference constitutes a waiver of any error in the proposed instructions or verdict."); *see also* **State v. Trammell**, 2019 WI 59, ¶25, 387 Wis. 2d 156, 928 N.W.2d 564 ("[T]he court of appeals has no power to reach an unobjected-to jury instruction because the court of appeals lacks a discretionary power of review."). Therefore, as both parties acknowledge, we may address counsel's forfeiture under the rubric of ineffective assistance of counsel. *See* **State v. Carprue**, 2004 WI 111, ¶47, 274 Wis. 2d 656, 683 N.W.2d 31 (explaining that, in the absence of an objection by trial counsel, appellate courts "follow 'the normal procedure in criminal cases,' which 'is to address waiver [or forfeiture]

within the rubric of the ineffective assistance of counsel'" (quoted source omitted)).

¶34 "Under the Sixth and Fourteenth Amendments to the United States Constitution, a criminal defendant is guaranteed the right to effective assistance of counsel." *State v. Balliette*, 2011 WI 79, ¶21, 336 Wis. 2d 358, 805 N.W.2d 334 (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984)). "Whether trial counsel's performance unconstitutionally deprived the defendant of the right to counsel is a question of law we review de novo." *State v. Williams*, 2015 WI 75, ¶35, 364 Wis. 2d 126, 867 N.W.2d 736. To prevail on an ineffective assistance of counsel claim, a defendant must show both that trial counsel's performance was deficient and that the deficient performance prejudiced the defendant. *Balliette*, 336 Wis. 2d 358, ¶21. We need not address both the deficient performance and prejudice components if the defendant "cannot make a sufficient showing on one." *State v. Tomlinson*, 2001 WI App 212, ¶40, 247 Wis. 2d 682, 635 N.W.2d 201.

¶35 In 2019, the legislature amended the definitions statute in the Crimes Against Children chapter of the Wisconsin Statutes to include a definition of "lewd exhibition of intimate parts," namely: "'Lewd exhibition of intimate parts' means the display of less than fully and opaquely covered intimate parts of a person who is posed as a sex object or in a way that places an unnatural or unusual focus on the intimate parts." WIS. STAT. § 948.01(1t); *see also* 2019 Wis. Act 16, § 1 (creating WIS. STAT. § 948.01(1t)). While this amendment did not go into effect until after the dates of Edwards' possession of the photographs at issue, *see* 2019 Wis. Act 16 (eff. July 12, 2019), the circuit court used the jury instruction that reflected this definition, instructing the jury in pertinent part that: "Lewd exhibition of intimate parts means the display of less than fully and opaquely

17

covered intimate parts of a person who is posed as a sex object or in a way that places an unnatural or unusual focus on the intimate parts."

¶36   To repeat, Edwards argues that trial counsel was ineffective for not objecting to this jury instruction because it reflected the statutory definition that, she asserts, is broader than the common law definition that was in effect at the time of the offenses.   Specifically, Edwards argues that, under the statutory definition, the State was required to prove either that A.B. was posed as a sex object *or* that she was posed in a way that placed an unusual or unnatural focus on her intimate parts.   But, Edwards' argument continues, under the common law definition, the State was required to prove both that A.B. was posed as a sex object *and* that she was photographed in way that placed an unusual or unnatural focus on her intimate parts.   We have rejected Edwards' interpretation of the common law definition as imposing both of these requirements.   Rather, as we have explained, under the common law definition set forth in **Petrone**, the jury, using its common sense, must determine whether an image displays a child's intimate parts and whether the image is sexually suggestive, and that, as to the latter determination, the jury is to be guided by whether the child is posed as a sex object, which may or may not include an unnatural or unusual focus on the intimate parts. **Petrone**, 161 Wis. 2d at 561.

¶37   In comparison, the statutory definition requires that the jury find that the image shows "the display of less than fully and opaquely covered intimate parts of a person who is posed as a sex object or in a way that places an unnatural or unusual focus on the intimate parts."   WIS. STAT. § 948.01(1t).   Both the statutory and the common law definitions require that the jury find, pertinent to the sexually suggestive determination, that there is an unnatural or unusual focus on the child's intimate parts or that the child is posed as a sex object in some other

manner. The only material difference pertinent to the images at issue here between the two definitions is the statute's addition of "less than fully and opaquely covered" to the requirement in *Petrone* that the image displays a child's intimate parts. Edwards does not argue that this difference is material here.

¶38 For purposes of this appeal, we conclude that the two definitions are materially the same and, therefore, that the jury instruction in this case, which reflected the statutory definition, was a correct statement of the law in place at the time of Edwards' offenses under the common law definition stated in *Petrone*, 161 Wis. 2d at 561.

¶39 Because the jury instruction accurately stated the controlling law, counsel's failure to object to the jury instruction was not deficient. *See State v. Reynolds*, 206 Wis. 2d 356, 369, 557 N.W.2d 821 (Ct. App. 1996) (failing to make a non-meritorious objection is not deficient performance).

¶40 In sum on this issue, Edwards fails to show that her trial counsel was ineffective for failing to object to the jury instruction on the possession of child pornography counts.

### III. Improper Closing Argument

¶41 Edwards argues that she is entitled to a new trial because the prosecutor improperly commented on the evidence during his rebuttal argument. Specifically, she takes issue with the prosecutor's statements, more extensively quoted below, that Edwards "participated in the manufacture of child pornography" by participating in the sexual assault that was recorded on the video. Edwards argues that this argument "invited the jury to find [her] guilty of

possessing child pornography because she was alleged to have been in a video [recording] where the child was sexually assaulted."

¶42     Generally, a prosecutor "is allowed considerable latitude in closing arguments," and the circuit court has discretion to determine the propriety of the argument. *State v. Burns*, 2011 WI 22, ¶48, 332 Wis. 2d 730, 798 N.W.2d 166. "We will affirm the court's ruling unless there has been a misuse of discretion which is likely to have affected the jury's verdict." *State v. Neuser*, 191 Wis. 2d 131, 136, 528 N.W.2d 49 (Ct. App. 1995).

¶43     "A 'prosecutor may comment on the evidence, detail the evidence, argue from it to a conclusion and state that the evidence convinces [the prosecutor] and should convince the jurors.'" *Burns*, 332 Wis. 2d 730, ¶48 (quoted source omitted). "The line between permissible and impermissible argument is drawn where the prosecutor goes beyond reasoning from the evidence and suggests that the jury should arrive at a verdict by considering factors other than the evidence." *Neuser*, 191 Wis. 2d at 136. "The constitutional test is whether the prosecutor's remarks 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (quoted source omitted). Whether the prosecutor's conduct affected the fairness of the trial is determined by viewing the statements "in the context of the entire trial." *Id.* Additionally, "[w]hen a circuit court gives a proper cautionary instruction, appellate courts presume that the jury followed that instruction and acted in accordance with the law." *State v. Gary M.B.*, 2004 WI 33, ¶33, 270 Wis. 2d 62, 676 N.W.2d 475.

*Additional Background*

¶44     At the trial, Detective Flick and A.B. testified that Edwards participated in sexually assaulting A.B., as shown in the 52-second video

recording discovered on Kvatek's phone. The audio of that video recording and a still shot taken from the video recording were entered into evidence. Edwards denied participating in the sexual assault. Separately, the State also entered into evidence the two photographs forming the basis for the two child pornography charges, labeled as Exhibits 2 and 3.

¶45 After the parties rested and before counsel gave their closing arguments, the circuit court instructed the jury, in pertinent part, as follows:

> [Edwards] is charged with two separate counts of possession of child pornography. The second count of the information alleges that [Edwards] … did … knowingly possess photographs of a child engaging in sexually explicit conduct, as depicted in Plaintiff's Exhibit 2….
>
> The third count of the information charges that [Edwards] … did … knowingly possess photographs of a child engaging in sexually explicit conduct, as depicted in Plaintiff's Exhibit 3….

The court also instructed the jury that "[r]emarks of the attorneys are not evidence" and that "[i]f the remarks suggest certain facts not in evidence, disregard that suggestion." The court told the jury: "Consider carefully the closing arguments of the attorneys, but their arguments and conclusions and opinions are not evidence. Draw your own conclusions from the evidence and decide upon your verdict according to the evidence under the instructions given to you by the Court."

¶46 During closing arguments, Edwards' trial counsel argued that "there's not evidence that proves beyond a reasonable doubt that … Edwards ever sexually assaulted [A.B]." Counsel also referred to A.B.'s testimony that she had previously lied about whether she had sex with Edwards to suggest that the jury

should not believe A.B. now.[5]   In rebuttal, the prosecutor, in listing the "coincidental things that support [A.B.'s] statement about what had occurred here," referred to the dildo found in Kvatek and Edwards' bedroom as being identified by Flick as "the dildo that was used in this child pornography – when this defendant and her boyfriend manufactured this child pornography involving this child."

¶47    Edwards' trial counsel interjected:  "I'm going to object to that because that's not – that's trying to imply that something other than Exhibits 2 and 3 are the basis for the child pornography."  After the circuit court sustained the objection, the prosecutor continued:  "Now the defendant … did participate in the manufacture of child pornography.  This child pornography – this 52-second video [recording] is child pornography.  It was recovered from the telephone of … Kvatek.  And this defendant participated in the manufacture of child pornography.  That's clearly evident by the evidence that's been presented to you."  The prosecutor then turned to the possession of child pornography charges, saying, "Now, these are the photo[graph]s that were on the defendant's phone….  These are clearly lewd displays.  These photo[graph]s … were taken immediately after this defendant and her boyfriend had sexually assaulted this child, and they were taking pictures of it."

¶48    After the circuit court sent the jury to deliberate, Edwards' trial counsel moved for a mistrial based on the prosecutor's argument "referring to the [still shot from the video recording] with the sexual – actual sex involved as being

---

[5] A.B. testified that she had denied having sex with Edwards in interviews with police and a social worker because she "thought that [Edwards] was a good person, and … wanted to protect her," but that those denials were lies.

child pornography when that is not the charge." Counsel argued that the prosecutor was "trying to impl[y] that [Edwards], by making that [video recording] or doing that, is guilty of charges of Counts 2 and 3."

¶49 The circuit court denied the motion, concluding that "the instructions that have been provided … are exceedingly clear as to how the jury … is to apply the facts that are in evidence to the specific charges." Specifically, the court noted that the instruction as to the possession of child pornography charge in Count 2 expressly said, "as depicted in Plaintiff's Exhibit 2," and that the instruction as to the possession of child pornography charge in Count 3 expressly said, "as depicted in Plaintiff's Exhibit 3." The court stated that the jury instructions were "very clear about the [possession of] child pornography charges relating to … the two exhibits, Exhibit 2 and [Exhibit] 3." The court added that it had instructed the jury before closing arguments that the remarks of the attorneys were not to be considered as evidence.

*Analysis*

¶50 Edwards fails to show that the circuit court erroneously exercised its discretion by denying Edwards' motion for a mistrial based on the prosecutor's remarks about Edwards' participation in the manufacturing of child pornography.

¶51 The prosecutor's remarks did not "suggest[] that the jury should arrive at a verdict by considering factors other than the evidence." *See Neuser*, 191 Wis. 2d at 136. Instead, as the circuit court determined, the prosecutor reasonably interpreted the evidence—namely, the 52-second video recording and the testimony that the dildo observed in the video recording was found in Kvatek and Edwards' bedroom—to argue that the video recording of the sexual assault of A.B. was, by its nature, the manufacture of child pornography; that Edwards

23

participated in the sexual assault shown in that video recording; and that her denial of that fact should not be believed. In addition, the prosecutor clarified that the video recording he referred to as child pornography was recovered from Kvatek's phone, not Edwards', so that there was no confusion that Edwards possessed the video recording. The prosecutor then separately discussed the photographs, saying, "Now, these were the photographs that were on [Edwards'] phone." The prosecutor's remarks made it clear that only the photographs were found on Edwards' phone.

¶52 In addition, we agree with the circuit court that its instructions expressly connected the possession of child pornography counts to the photographs only. The court's instructions on the possession of child pornography counts expressly referenced "photographs" and identified Exhibit 2 as the basis for Count 2 and Exhibit 3 as the basis for Count 3. The court also instructed the jury that it was to "[d]raw [its] own conclusions from the evidence and decide upon [its] verdict according to the evidence," and that it was not to consider the closing arguments as evidence. We presume that the jury acted as instructed. *See Gary M.B.*, 270 Wis. 2d 62, ¶33.

¶53 In sum on this issue, based on the exhibits and testimony presented at trial, the prosecutor's remarks read in context, and the circuit court's instructions that statements by the attorneys were not evidence and that each possession of child pornography count applied to a specific, labeled exhibit consisting of a photograph, we conclude that the prosecutor's statements were permissible and did not affect the fairness of the trial. *See Neuser*, 191 Wis. 2d at 136 (explaining that whether the prosecutor's statements "'so infected the trial with unfairness as to make the resulting conviction a denial of due process' … is determined by viewing the statements in … the context of the entire trial" (quoted

source and citation omitted)). Accordingly, Edwards fails to show that the court erroneously exercised its discretion in denying her motion for a mistrial.

## CONCLUSION

¶54    For the reasons stated above, we affirm.

*By the Court.*—Judgment and order affirmed.

Not recommended for publication in the official reports.